Good morning. Gerald Brannan on behalf of Curtis Hendrix, the appellant. Officer Rivera's affidavit fails to provide a complete and full statement of necessity, and his affidavits suffer from the flaws highlighted by the court in USA v. Blackmun. They identify overly expansive objectives which are too generalized and would be true of all drug conspiracies or any conspiracy. They include boilerplate conclusions, many of them, that are nothing more than a description of the inherent limitations of traditional investigative techniques. Now, in his necessity statement, he says, he starts out by saying that he admits that traditional investigative techniques have been successful. He says that. Then he says, so successful that they provide probable cause for wiretap authorization. That's kind of putting the cart before the horse. Now, he says that they've been successful in achieving the implication is the specific, realizable, reasonable objectives that anyone would anticipate from traditional techniques. But what happens is, is he changes course, and he goes further on in the affidavit. He then describes what are the real objectives of the investigation. And this is the real basis for his necessity claim. Counsel, I take it that on the statement that we have, we review that de novo, right? Correct. It's only the judge's decision once that statement has been reviewed that we review for abuse of discretion, right? That's correct. That's correct. Now, this is how he describes the primary objections. And these are just the kinds of objectives that Blackman took issue with. The primary objectives of this investigation are to dismantle the entire criminal street gang, to determine the full scope of criminal activities, and the various methods used by the members of the gang and the identities of those involved. He goes on when he's describing why search warrants would fail. He goes on and says, makes statements like this. The execution of additional search warrants at this time would not provide the necessary evidence to identify all of the target subjects and dismantle the gang. I guess I'm sort of confused about what's wrong with that. Now, the government says they used traditional techniques for four years, but they learned the names of only 20 out of the 76 members. And we've said in U.S. v. Torres that you can uphold the or it upholds these sorts of necessity findings where the government could get some but not all of the criminals involved in a scheme. So it sounds to me, when I reviewed the affidavit, that that's what the government was saying. Our traditional techniques had some success but didn't get the entire criminal enterprise, something we've upheld. So what's wrong with finding necessity under those circumstances? Well, under Blackman, again, I'm relying on Blackman. Blackman said those kinds of goals are too general. They relate to any conspiracy. And by doing that, they gut the wiretap authorization law. I mean, if that's the case, then you could get a wiretap authorization without really making anything but boilerplate things. Why is that? If there's a specific criminal enterprise that's identified and the government says we know there's a range of people involved and we've only gotten a subset, I guess I don't understand why that's overly broad if you're looking at a specific criminal enterprise. Is there some specific language in Blackman you'd like me to look at? Well, there's a lot of language in Blackman that ---- What would say that this specific issue is problematic? Well, let me see. I want to quote it. As stated above, this is Blackman. This is a quote from Blackman. The government must strictly adhere to the requirements of 2580. On what page? I'm sorry. That would be at 1211 in Blackman. That's an interior site. As stated above, the government must strictly adhere to the requirements of 2518. The pen registers do not reveal the identity of the callers. Now, these are ---- I just want to interject that these are assertions that Rivera, Affiant Rivera, made in his affidavits. The pen registers do not reveal the identity of the callers, that drug dealers know it is in their best interest to reveal as little as possible when they're on the phone, that witnesses cannot lead to the prosecution of an entire drug organization, and that traditional investigative methods do not reveal all, are generic problems of police investigation. Their generic nature does not dissipate simply because the government claims a vast investigative purpose. Wiretaps themselves would ---- could little achieve the investigative goals stated in the government's application. The government may not cast its investigative net so far and so wide as to manufacture necessity in all circumstances. Doing so would render the requirements of 2518 nullities. And I submit that this is what the affidavits in this case pretty much do. He said ---- But in that case, in Blackman, wasn't the ---- they took an affidavit that was aimed at one person, and then they applied it to a different person who was unrelated? Is that correct? Well, that was ---- that's part of ---- yeah, that's a distinction, a distinctive fact. And so they ---- the concern was that this was a boilerplate which hadn't been tailored to the specific enterprise, but that's not the case in our case, is it? That is not the case. But I think that there's enough ---- the emphasis that Rivera gives to these over all-encompassing objectives that are ---- could ---- well, they're generic, they're ---- they could be applied anywhere at any time, and then goes on and makes these statements, boilerplate statements, that are really nothing more than descriptions of the inherent limitations of these things, like, for example, in talking about surveillance. Around-the-clock surveillance would be compromised because gang members are surveillance conscious. Didn't they have some evidence supporting that, such as the counter-surveillance moves and the like? I mean, I guess I'm having trouble seeing why the affidavit wasn't sufficiently specific to this particular investigation, which is all our case law requires. I mean, it wasn't taken out and applied to some other investigation. It relayed the experience of that officer with this particular investigation. Well, I just referred to his own affidavit. In his affidavit, I counted ---- now, the investigation we're talking about started in 04, went through to May of 08 when the first wiretap authorization occurred. But I counted 12 ---- with respect to informants, I counted 12 successful instances which led to arrests and seizures. With respect to surveillance, I counted 19 successful events. Most of these events, by the way, are coming in the 9 to 12 months just prior to the wiretap authorization request. As far as searches, I counted 12 successful events, events leading to arrests and     I think that's a very specific amount of information. He devotes, and that's at ER 132 to 152, Penn Register toll analysis. He really describes a lot of success in that regard. Very specific. Very commendable. Very specific. Very specific. And that's at ER, this is ER 2, 157 to 70. I think we can go back and reread that. Yeah. I want to ask you a specific question, if you don't mind. I don't mind. You've relied directly on Blackman, but we've taken a lot of pains in subsequent cases to restrict Blackman to its facts. I'm thinking specifically of Gomez and Fernandez, and part of your argument is based upon the language which now seems to be limited by subsequent cases. So how – I just don't know how much legs there are under Blackman anymore. Well, it depends on where this Court decides it wants to draw the line in terms of holding up the specificities of the statute. I mean, the YTAP statute. Well, for example, in Fernandez, we state that the holding of Blackman, quote, was premised on a finding that the affidavits supporting the YTAP applications were plagued by material misrepresentations and omissions. As you pointed out, there are no omissions. They've been very clear, and there was no misrepresentation – there were no omissions. Well, I think there are omissions. I mean, in his necessity statement, he makes these claims that none of this stuff is working, and yet – Well, he's saying he's had success. He doesn't say none isn't working. They've had some success, but he wants to get the full group. And – He says things like surveillance of additional residences at this early stage of the investigation would be premature. The investigation had been running for four years. What does he mean by early stage? That's kind of misleading. He talks about the one way out from the drug sales location, the budget motel. One way out. That would be an advantage to law enforcement, I think. I mean, if you were willing to set up a poll camera. He didn't even do that once. He never set up any video surveillance whatsoever, and he didn't explain why. Any other questions? Thank you very much. Let's hear from the government. Good morning, Your Honors. My name is Kim Sanchez. I am the attorney who handled the suppression motion in this case, as well as preparing the brief to submit to the Court. I follow closely the points mentioned by the Court, and I think the case lies squarely on our side. Three of the cases decided by this Court and cited by the defense, Carnero, Gonzalez, and Blackman, for the proposition that boilerplate is insufficient all involved omissions and misstatements that aren't present in this case, and also involved applying one wiretap to another target by copying the underlying affidavit. The other cases in this circuit squarely support the information set forth in the affidavit in this case. And I don't want to waste the Court's time, so if the Court has no questions, I'll just sit down. Thank you very much. Thank you. The case just argued is submitted. We thank you both for your presentation.
judges: Wallace, Smith, Ikuta